**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**GEORGE J. O'CONNELL,**

                                        **Plaintiff,**


                    **v.**                                **5:09-CV-364**
                                                          **(FJS/ATB)**

**ONONDAGA COUNTY, ONONDAGA**
**COUNTY SHERIFF'S DEPARTMENT,**
**and KEVIN WALSH, in his capacity as**
**Sheriff of Onondaga County,**

                                        **Defendants.**
_____

**APPEARANCES**                          **OF COUNSEL**

**LAW OFFICE OF K. FELICIA DAVIS**        **K. FELICIA DAVIS, ESQ.**
P.O. Box 591
Syracuse, New York 13201
Attorneys for Plaintiff

**ONONDAGA COUNTY DEPARTMENT**            **CAROL L. RHINEHART, ESQ.**
**OF LAW**
421 Montgomery Street, 10th Floor
Syracuse, New York 13202
Attorneys for Defendants


**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

         Plaintiff George J. O'Connell brings this action against Defendant Onondaga County,

Defendant Onondaga County Sheriff's Department, and Defendant Kevin Walsh, in his official

capacity as Sheriff of Onondaga County, pursuant to the Americans with Disabilities Act

("ADA"), the Rehabilitation Act of 1973 ("RA"), and the New York State Human Rights Law

("NYHRL").[1]  *See* Dkt. No. 11, Amended Complaint.  Plaintiff alleges that Defendant took

adverse employment actions against him because of his disability and failed to make reasonable

accommodations for his disability in violation of the ADA, the RA, 42 U.S.C. §§ 1981 and 1983,

and the NYHRL.  Plaintiff further alleges that, pursuant to New York law, Defendant's conduct

constituted intentional infliction of emotional distress, negligent infliction of emotional distress,

and breach of contract.

     Currently pending before the Court is Defendant's motion for summary judgment.

## II. BACKGROUND[2]

     Plaintiff, a Caucasian male, has been employed as a Deputy Sheriff in the Custody

Division of the Onondaga County Sheriff's Department since 1990.  On November 7, 1993,

Plaintiff injured his left shoulder while attempting to prevent an inmate from committing suicide.

Pursuant to Department policy and procedure, Plaintiff reported his on-the-job injury the next

day.  As a result of this injury, on November 11, 1993, Plaintiff's primary care physician

recommended that he remain out of work until cleared by an orthopedic physician.  On

November 15, 1993, Dr. James Newman, an orthopedic physician, examined Plaintiff and

authorized him to return to work the next day but recommended that he only perform "desk

---

    [1] The Court finds that Plaintiff's claims against Onondaga County, the Onondaga County Sheriff's Department, and Defendant Walsh in his official capacity are redundant and will refer to Plaintiff's claims as against Defendant Onondaga County (hereinafter, "Defendant") only.  *See Caidor v. M&T Bank*, No. 5:05-CV-297, 2006 WL 839547, *2 (N.D.N.Y. Mar. 27, 2006) (quotations and other citations omitted); *Zuk v. Onondaga Cnty.*, No. 5:09-CV-0272, 2011 WL 4344043, *9 (N.D.N.Y. Sept. 14, 2011) (quotations omitted).

    [2] Unless otherwise noted, the following facts are not in dispute.

-2-

work."  Plaintiff's job duties were temporarily modified accordingly.

By December 27, 1993, Plaintiff returned to "full duty" work with the sole restriction that he should not work overtime until February 1994.  Since Plaintiff's shoulder injury continued to cause him pain, Dr. Newman recommended that he undergo a distal clavicle excision surgery.  On March 2, 1994, Dr. Newman determined Plaintiff to be "totally disabled" from his duties as a custody deputy; and, on May 20, 1994, Plaintiff underwent the surgical procedure that Dr. Newman had recommended.  Plaintiff returned to work on August 22, 1994, with several physical medical restrictions, and his work assignments were again temporarily modified accordingly.

Plaintiff suffered another on-the-job injury to his left shoulder in January 1996 while attempting to lift a crate.  On July 1, 1996, he underwent a second surgery and was advised to refrain from work until notified otherwise.  Plaintiff was authorized to return to work on September 30, 1996.  At that time, he was medically deemed capable of performing full duty work without restrictions other than, again, avoiding overtime hours.

Periodically, over the next several years, Plaintiff visited Dr. Newman due to recurring pain and spasms in his left shoulder and arm.  On June 10, 1999, Dr. Newman indicated that, although Plaintiff may continue to experience "acute exacerbations of this pain," he would "not limit [Plaintiff] at all from anything permanently however when he has discomfort, avoiding cross-over maneuvers will keep [Plaintiff] more comfortable."  *See* Dkt. No. 22, Affidavit of Thomas J. Metz dated February 11, 2011 ("Metz Aff."), Exh. "N" attached thereto.  Dr. Newman further stated that "unfortunately there is little more that [he could] provide for [Plaintiff]," and he "strongly encourage[d] [Plaintiff] to continue to deal with this as best as he can."  *See id.*

-3-

During a subsequent visit on December 20, 2000, Dr. Newman stated that Plaintiff could return to full duty work without restriction the following day. *See* Metz Aff., Exhs. "Q" & "R" attached thereto.

In November 2000, Dr. W. David Ferraraccio, an orthopedic surgeon, conducted an independent medical examination of Plaintiff to assist in the resolution of an ongoing Workers' Compensation claim. Dr. Ferraraccio determined that Plaintiff had a cumulative 50% "loss of use" in his left arm — 40% reduction in range of motion and 10% loss of bone. *See* Metz Aff., Exh. "P" attached thereto. Dr. Ferraraccio concluded that he expected Plaintiff to have "recurring temporary flare-ups as he ha[d] experienced over the past two or three years" and that Plaintiff "ha[d] reached maximum medical improvement." *See id.* Following the Workers Compensation hearing held on April 27, 2001, Plaintiff received a "schedule award" for lost time due to his 50% loss of use in his left arm. *See* Metz Aff., Exh. "S" attached thereto.

In December 2002, Plaintiff and the Deputy Sheriff's Benevolent Association of Onondaga County, Inc. ("DSBA")[3] entered into a settlement agreement with Defendant stemming from four disciplinary charges filed against him in 2002. As part of that settlement agreement, Plaintiff agreed to submit an application for disability retirement to the New York State and Local Retirement System, and Defendant agreed to drop the disciplinary charges against Plaintiff. On January 4, 2005, the New York State and Local Retirement System denied Plaintiff's application for disability retirement, finding that he "[was] not permanently incapacitated for the performance of duties." *See* Metz Aff., Exh. "V" attached thereto.

_____

[3] All deputies are members of the Deputy Sheriff's Benevolent Association of Onondaga County, Inc. ("DSBA") — the local Union — and are subject to the terms and conditions of the Collective Bargaining Agreement between Defendant and the DSBA.

On October 3, 2006, Plaintiff reaggravated his left shoulder during a "pod shakedown," and he filed another injury report in that regard.  *See* Metz Aff, Exh. "W" attached thereto.  Also on October 3, 2006, Plaintiff began to make written requests to Defendant to accommodate his disability by placing him in a light duty position.  In response, Kathy Homestead, Defendant's Personnel Officer, sent Plaintiff a memorandum regarding his request for an ADA accommodation.  Among other things, she asked Plaintiff to provide a formal written request for an ADA accommodation and a physician statement that identified his disability.  In response, on January 8, 2007, Plaintiff provided Lieutenant Thomas Metz ("Lieutenant Metz"), Defendant's Human Resources Manager, with a handwritten letter request for an accommodation, a Work Limitation/Restriction form restricting him from overtime, and documents from Dr. Lara Cain regarding his physical condition.  The medical documentation that Dr. Cain provided indicated that it would be appropriate to place Plaintiff in a position better suited for his disability; still, however, she released him to full duty work with the caveat that he should avoid overtime.

During a meeting on January 31, 2007, to discuss Plaintiff's requests to be reassigned, Plaintiff reiterated his interest in a light duty position that required less inmate contact, such as a desk job that involved working with a computer.  Defendant contends that Plaintiff's lack of computer training disqualified him from such a position, but Plaintiff alleges that these positions were routinely given to those in need of light duty.  Although Defendant reviewed other such "unique mission positions," it determined that Plaintiff lacked the requisite skill and training for these positions as well.  Defendant further contends that assigning Plaintiff to a permanent light duty position "was not feasible" because the DSBA would not support putting someone with less seniority in a permanent position due to a disability because such positions were subject to a

bidding process.  Plaintiff disputes this assertion.

Another physician, Dr. Warren Silverman, conducted an independent medical examination of Plaintiff on July 17, 2007, at the behest of Lieutenant Metz.  Dr. Silverman determined that, although Plaintiff exhibited some questionable limitations in his left shoulder's range of motion, there was no evidence that Plaintiff had a permanent impairment that substantially limited any of his major life activities.  *See* Dkt. No. 18-3, Affidavit of Warren Silverman dated January 18, 2011 ("Silverman Aff."), Exh. "B" attached thereto.  Dr. Silverman concluded, based on an examination of Plaintiff and a rather extensive review of his lengthy medical records, that Plaintiff was capable of performing his full duty functions as a custody deputy without any restrictions or limitations.  *See id.*

Also relevant are the following three arbitration proceedings in which Plaintiff and Defendant engaged.

On August 10, 2006, Arbitrator Louis V. Imundo, Jr., found that Defendant subjected Plaintiff to disparate treatment and that it did not have just cause to terminate or even discipline him for his record of absences.  Defendant had brought twelve charges against Plaintiff, all based on absences without leave, dating from April 2, 2001, until February 17, 2005.  Arbitrator Imundo ordered that Defendant drop all charges and expunge them from Plaintiff's record and directed Defendant to "make a good faith effort to provide some form of job/work accommodation for [Plaintiff]."  *See* Dkt. No. 24, Exh. 3 attached thereto.  Defendant unsuccessfully appealed this decision to the New York State Supreme Court, which confirmed the award on September 12, 2007.

On January 28, 2009, Plaintiff and the DSBA sought arbitration against Defendant due to

disciplinary charges and a ten-day suspension that Defendant levied against him on January 23, 2009, for four offenses that occurred in 2007.  Arbitrator Joyce M. Klein found that three of the four charges were unsubstantiated and dismissed them; and, further, she reversed the ten-day suspension and awarded Plaintiff any lost back pay and benefits.

Finally, a third arbitration was held on December 15, 2009, before Arbitrator Clifford B. Donn arising from a September 11, 2008 incident in which Defendant disciplined Plaintiff for complaining about having to work overtime.  Defendant levied formal charges against Plaintiff on July 22, 2009, and suspended him for twenty days.  On January 30, 2010, Arbitrator Donn found that Defendant had continued to refuse to comply with Arbitrator Imundo's order that it make a good faith effort to accommodate Plaintiff.  Arbitrator Donn concluded that Defendant did not have just cause to discipline Plaintiff; and, accordingly, he dismissed all charges against Plaintiff and awarded him any lost pay and benefits.

On October 11, 2006, Plaintiff filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC").  The EEOC issued a right to sue letter on December 30, 2008; and, on March 29, 2009, Plaintiff commenced this action against Defendant.  On December 18, 2009, Plaintiff filed his amended complaint, in which he alleged the following eight causes of action: (1) violations of the ADA for disability discrimination, failure to accommodate, and retaliation; (2) violations of the NYHRL for disability discrimination and retaliation; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; (5) breach of contract; (6) unspecified violations of 42 U.S.C. § 1981; (7) unspecified violations of 42 U.S.C. § 1983; and (8) violations of the RA for disability discrimination, failure to accommodate, and retaliation.

-7-

## III. DISCUSSION

**A.     Standard of review**

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is initially on the moving party to demonstrate the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp.*, 477 U.S. at 323. The Court must view all facts, draw all inferences, and resolve all ambiguities in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted).

**B.     Disability discrimination, failure to accommodate, and retaliation claims
under the ADA (first cause of action) and the RA (eighth cause of action)[4]**

The ADA prohibits discrimination in the workplace "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Courts analyze claims of discrimination under the ADA according to the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009) (citation omitted). Under such an analysis, the plaintiff bears the initial burden of establishing a prima

---

[4] The Court discusses Plaintiff's ADA (first) and RA (eighth) claims together because they impose identical requirements; and, thus, the analysis of the sufficiency of these claims is the same. *See Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999) (citation omitted); *Graham v. Watertown City Sch. Dist.*, No. 7:10-CV-756, 2011 WL 1344149, *9 (N.D.N.Y. Apr. 8, 2011) (quotation omitted). Accordingly, the discussion herein referring to the ADA alone should be read to include the RA, and vice versa.

facie case. *See Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869 (2d Cir. 1998) (citation omitted).

To be entitled to the protections of the ADA, a plaintiff must qualify as "disabled" under the statute. *See Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004) (quotation omitted). The ADA Amendments Act (the "ADAAA") of 2008, which became effective as of January 1, 2009, broadened the definition of a disability under the ADA (and, by express inclusion, the RA). *See* ADA Amendments Act of 2008, Pub. L. No. 110-325 (2008). However, the ADAAA does not apply retroactively to claims that arose prior to its effective date, January 1, 2009. *See Wega v. Ctr. for Disability Rights, Inc.*, 395 Fed. Appx. 782, 784 n.1 (2d Cir. 2010) (citation omitted); *DiFillippo v. Special Metals Corp.*, No. 6:09-CV-760, 2011 WL 4595204, *9 n.2 (N.D.N.Y. Sept. 30, 2011) (citations omitted); *Parada v. Banco Indus. de Venezuela, C.A.*, No. 10 Civ. 0883, 2011 WL 519295, *4 n.4 (S.D.N.Y. Feb. 15, 2011) (citations omitted).

In this case, Plaintiff alleges discriminatory conduct that occurred both before and after January 1, 2009. Therefore, the Court will address Plaintiff's claims based on conduct that occurred prior to January 1, 2009, separately from his claims that are based on conduct that occurred after that date.

### 1. Disability under the ADA

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). Plaintiff contends that he is disabled under each of these provisions. Defendant contends that the Court

should summarily dismiss Plaintiff's claims pursuant to the ADA and the RA because he does not qualify as disabled.

### a. Physical or mental impairment that substantially limits one or more of the major life activities

Prior to the ADAAA, in determining whether an individual had a disability for purposes of the ADA, the Second Circuit had adopted the three-step approach that the Supreme Court outlined in *Bragdon v. Abbott*, 524 U.S. 624 (1998). *See Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002) (quotations omitted). Under this analysis, a plaintiff must establish the following: (1) he suffers from a physical or mental impairment; (2) the impairment affects a major life activity; and (3) the impairment substantially limits that major life activity. *See id.* (quotations omitted). The plaintiff must satisfy each element for his condition to qualify as an ADA-recognized disability. *See Colwell v. Suffolk Cnty. Police Dep't*, 158 F.3d 635, 641 (2d Cir. 1998), *superseded by statute on other grounds by* 42 U.S.C. § 12102(3)(A).

### (1). Physical or mental impairment

The pre-ADAAA EEOC regulations defined physical impairment as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological [or] musculoskeletal . . . ." 29 C.F.R. § 1630.2(h)(1).[5] In this case, Defendant concedes that Plaintiff's 50% loss of use of his left shoulder qualifies as a "physical

---

[5] The Second Circuit looks to EEOC regulations with "'great deference'" in determining whether a person is disabled under the ADA. *See Bartlett v. N.Y. State Bd. of Law Exam'rs*, 226 F.3d 69, 79 (2d Cir. 2000) (quotation omitted).

impairment" within the meaning of the ADA since it is a physiological disorder affecting the musculoskeletal system.  Accordingly, the Court finds that Plaintiff has a physical impairment to his left shoulder.

### *(2). Major life activity*

Next, Plaintiff must identify the activity or activities claimed to be impaired and establish that it constitutes a "major life activity" under the ADA.  Major life activities include "'functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working'" as well as "'sitting, standing, lifting, or reaching.'"  *Colwell*, 158 F.3d at 642 (quotations omitted).  In this case, Plaintiff alleges that his disability affects the following major life activities: "his ability to lift, balance himself, reach above his head, shovel snow, lift or carry his children, or to complete every day tasks of bathing, cooking, washing of dishes or clothing, sweeping, [and] work . . . ."  *See* Amended Complaint at ¶ 12.  Not all of the activities that Plaintiff lists are considered "major life activities" within the meaning of the ADA.  However, Plaintiff has identified the following activities — lifting, balancing, reaching, performing manual tasks, caring for oneself, and working — which are "major life activities" under the ADA.  Therefore, the Court finds that Plaintiff has sufficiently shown that his "physical impairment" impacts a "major life activity."

### *(3). Substantially limits*

Finally, to establish a disability under the ADA, it is not enough for a physical impairment to merely impact a major life activity; the plaintiff must further demonstrate that his physical impairment "substantially limits" one or more of these major life activities.  Defendant

contends that Plaintiff has failed to show a substantial limitation in this regard.

Under the pre-ADAAA EEOC regulations, "substantially limits" meant "[u]nable to perform a major life activity that the average person" could perform, or "[s]ignificantly restricted as to the condition, manner or duration under which an individual [could] perform a particular major life activity as compared to" the average person. 29 C.F.R. § 1630.2(j)(1). Factors a court may consider in this analysis include (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or the expected permanent or long-term impact, of the impairment. *See* 29 C.F.R. § 1630.2(j)(2). With respect to the major life activity of working, the EEOC regulations provided that

> [t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.
>
> The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i).

Mere temporary or transitory restrictions are not "substantially limiting" and thus do not typically render a person "disabled" under the ADA. *See Adams v. Citizens Advice Bureau*, 187 F.3d 315, 316-17 (2d Cir. 1999) (quotation omitted); *Murray v. Sysco Corp.*, No. CIV96CV1073, 1998 WL 160826, *5 (N.D.N.Y. Apr. 2, 1998). Further, "'[i]ntermittent, episodic impairments are not disabilities.'" *Horwitz v. L & J.G. Stickley, Inc.*, 122 F. Supp. 2d 350, 356 (N.D.N.Y. 2000) (quotation omitted).

In this case, Plaintiff has presented evidence that his left shoulder is permanently damaged because he has a 50% loss of use of his left arm; and, as a result, he suffers from

-12-

chronic flare-ups of pain and sometimes experiences "intense pain and a locked shoulder." *See*

Dkt. No. 24, Exh. 1, Affidavit of Plaintiff George J. O'Connell dated March 21, 2011 ("Plaintiff

Aff."), at ¶¶ 12-13.  This pain allegedly interferes with his mobility and substantially limits the

other major life activities identified above. *See id.* at ¶ 13.  Plaintiff testified that, on "bad days,"

he is bed-ridden, experiences spasms, and has pain that reduces him to tears. *See id.* at ¶ 14;

Deposition Transcript of Plaintiff George J. O'Connell dated August 20, 2010 ("Plaintiff Tr."), at

89-91.  He further testified that he has experienced up to two months of consecutive "bad days"

in which he suffered extreme pain on a daily basis.  *See* Plaintiff Tr. at 92-93.  Moreover,

Plaintiff claims that he has a limited range of motion in his left arm and that he is unable to lift

certain heavy objects.  *See* Plaintiff Tr. at 89-90; Plaintiff Aff. at ¶¶ 13-14.  The majority of these

statements are supported by physician's reports, an independent medical examination in 2000, a

Workers Compensation award in 2001, and the three arbitration awards discussed above. *See*

Metz Aff., Exhs. "H," "K," & "S" attached thereto; Dkt. No. 24.

Defendant, on the other hand, has submitted evidence tending to show that Plaintiff was

only temporarily disabled.  *See* Metz Aff., Exh. "V" attached thereto (denying Plaintiff's

application for disability retirement due to NYS's determination that he was not permanently

incapacitated from the performance of duties); Metz Aff., Exh. "N" attached thereto (Dr.

Newman indicating in June 1999 that, although Plaintiff may continue to experience "acute

exacerbations of [] pain," he would "not limit [Plaintiff] at all from anything permanently

however when he has discomfort, avoiding cross-over maneuvers will keep [Plaintiff] more

comfortable").  Defendant also points to Plaintiff's deposition testimony in which he analogized

the pain in his left shoulder to a "minor toothache" and stated that, when he is at his "baseline,"

-13-

he is capable of caring for himself and performing his job duties.  *See* Plaintiff Tr. at 31-32, 90-91, 103-105.

As stated, Plaintiff claims that he is either "unable" or "significantly restricted" in his ability to lift, balance, reach, perform manual tasks, care for himself, and work.  As to balancing, performing manual tasks, and caring for himself, Plaintiff has introduced no evidence to support a finding that he is substantially limited in this regard.  As to lifting, reaching, and working, aside from Plaintiff's 50% loss of use in his left arm, for the reasons discussed below, the Court finds that there is insufficient evidence in the record to create an issue of fact as to whether Plaintiff is substantially limited in the performance of these major life activities for purposes of the ADA.

First, Plaintiff's "reliance on his permanent injury rating is not sufficient, in and of itself, to establish that he is disabled where the record shows that [the] permanent impairment does not substantially limit any of his major life activities."  *Lajeunesse v. Great Atl. & Pacific Tea Co., Inc.*, 160 F. Supp. 2d 324, 332 (D. Conn. 2001) (citations omitted).  In addition, pain, standing alone, does not constitute a disability.  *See Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983); *Boyd v. City of N.Y. Parks & Recreation*, No. 05 Civ. 6962, 2008 WL 5092841, *7 (S.D.N.Y. Dec. 2, 2008) (citations omitted).

Plaintiff is currently working as a Deputy Sheriff without restrictions.  When asked if there was any task that he could not perform because of his shoulder limitations, Plaintiff testified: "I do whatever I'm ordered to do to the best of my ability.  There's things I shouldn't be doing — like, I do cell searches all the time.  I'm picking up crates; I'm picking up things that I shouldn't be doing."  *See* Plaintiff Tr. at 73-74.  As one example of his physical restrictions, Plaintiff testified that he dropped a microwave that he was attempting to lift during the cell

search of an inmate because his shoulder was not strong enough to support it. *See id.* at 74. A lifting restriction, in and of itself, does not constitute a disability under the ADA. *See Colwell*, 158 F.3d at 644-45; *Huskins v. Pepsi Cola of Ogdensburg Bottlers, Inc.*, 180 F. Supp. 2d 347, 352 (N.D.N.Y. 2001) (quotation and other citation omitted); *Varre v. City of Syracuse*, No. 96-CV-1792, 2000 WL 270966, *5 (N.D.N.Y. Mar. 6, 2000) (collecting cases).

Following his voluminous absences from work, several doctors' reports and notes over the years indicated that Plaintiff was capable of returning to full duty work without medical restrictions. Although the doctors' notes do not preclude a finding that Plaintiff was "significantly restricted as to the condition, manner or duration" under which he was able to work, the Court finds Dr. Newman's notes to be particularly persuasive evidence that Plaintiff was medically capable of working full duty and without restrictions.[6]

Plaintiff also testified that his work environment was somewhat physically demanding and that his physical limitations hindered his ability to dutifully perform certain tasks. *See* Plaintiff Tr. at 73-74, 165-68. However, he admittedly continued to work without restrictions, even if he did so with some difficulty and apprehension about his ability to protect himself and others. *See id.* at 163-65. Further, Plaintiff testified that "[m]ost of the job is 90 percent watching, seeing what's going on and, you know, just being a problem solver." *See id.* at 88-89.

Even viewed in the light most favorable to Plaintiff, the record does not support a finding that Plaintiff was substantially limited in a broad range of jobs, and perhaps not even in the

---

[6] Although Plaintiff claims that he asked some of his doctors to include such findings because Defendant would not allow him to return to work unless the notes stated that he could work without restrictions, Dr. Newman offered this diagnosis without prompting. *See* Plaintiff Tr. at 95.

-15-

specific job of Deputy Sheriff. Accordingly, the Court finds that, although Plaintiff has shown that his physical impairment *affects* his ability to lift, reach, and work, he has not created a genuine issue of material fact as to whether it *substantially limits* those activities. Indeed,

> [a]lthough almost any impairment may, of course, in some way affect a major life activity, the ADA clearly does not consider every impaired person to be disabled. Thus, in assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely *affect* major life activities from those that *substantially limit* those activities.

*Ryan*, 135 F.3d at 870 (citation omitted).[7]

Therefore, at the time Defendant allegedly took adverse employment actions against Plaintiff prior to 2009, the Court finds that Plaintiff was not "unable" or "significantly restricted" in his ability to lift, balance, reach, perform manual tasks, care for himself, or work because he was not "substantially limited" in these activities. Accordingly, the Court finds that Plaintiff was not actually disabled under the ADA.

### b. Record of impairment

Plaintiff may still qualify as disabled under the ADA without a showing of a physical or mental impairment that substantially limits a major life activity by establishing "'a record of such an impairment[.]'" *Colwell*, 158 F.3d at 641 (quoting 42 U.S.C. § 12102[(2)(B)] (1994)). This

---

[7] Moreover, even if Plaintiff were able to show that he was significantly restricted in his ability to perform all functions necessary to the job of Deputy Sheriff (which he cannot), this, standing alone, would be insufficient to state a claim of disability under the ADA. Indeed, "[a]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir. 1994) (citation omitted); *see also Muller v. Costello*, 187 F.3d 298, 313 (2d Cir. 1999) (finding that the plaintiff was not substantially limited in the ability to work even though he could no longer perform the duties of a corrections officer because he was capable of performing other jobs using similar training, knowledge, skills, or abilities).

-16-

"'ensure[s] that people are not discriminated against because of a history of disability.'"  *Id.* at 645 (quotation omitted).  The EEOC regulations defined "record of impairment" as where a person "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities."  29 C.F.R. § 1630.2(k)(1).  Accordingly, the record on which the employer relied must indicate that the individual had or has a substantially limiting impairment.  *See Colwell*, 158 F.3d at 645.

Here, Plaintiff alleges that his medical history, which includes several years of medical documentation reflecting the extent of his shoulder injury, constitutes a record of physical impairment that substantially limited the major life activity of working.[8]  Plaintiff first underwent a surgical procedure to his left shoulder on May 20, 1994, and he returned to work on August 22, 1994, with several physical restrictions.  On July 1, 1996, Plaintiff underwent a second surgery and returned to work on September 30, 1996, with no physical restrictions.  Thereafter, Plaintiff continued to miss work frequently due to recurring shoulder pain, but his doctors continued to authorize him to return to work without restrictions.

Even given this medical history, however, for the reasons discussed above, the Court finds that Plaintiff has not demonstrated a record of a substantially limiting physical impairment in his ability to work.  *See id.* at 646 (holding that "one month in the hospital and six months at home," which amounted to "a seven-month impairment of [the plaintiff's] ability to work, [coupled] with the non-particularized and unspecific residual limitations [on the plaintiff's] work, [was] too short a duration and too vague an extent to be 'substantially limiting[]'" (citations

---

[8] Plaintiff only argues that there is a record of impairment as to the major life activity of working; and, thus, the Court's analysis is limited to that major life activity.

-17-

omitted)); *Horwitz v. L & J.G. Stickley, Inc.*, 20 Fed. Appx. 76, 80 (2d Cir. 2001) (finding that

"past hospitalization, even coupled with continued treatment, does not create a record of a

substantially limiting medical condition" (citation omitted)); *Owens v. Longo*, No. 06-CV-0281,

2008 WL 84594, *6 (N.D.N.Y. Jan. 7, 2008) (stating that "a plaintiff will not automatically be

found disabled upon presentation of records of a medical appointment or surgery regarding an

impairment"; but, rather, the employer must have relied on a record that indicates "a

'*substantially limiting* impairment'" (quotation and other citations omitted)).

Plaintiff has unquestionably demonstrated a record of an impairment, but it is not a record

of a *substantially limiting* impairment for purposes of the ADA.  Accordingly, the Court finds

that Plaintiff cannot establish that he has a disability under the ADA because of a "record of

impairment."

### c. Regarded as impaired

The third way in which a plaintiff may qualify as disabled under the ADA is to prove that

the defendant "'regarded [him] as'" having an impairment that substantially limited one or more

of the major life activities.[9]  *Colwell*, 158 F.3d at 641 (quoting 42 U.S.C. § 12102[(2)(C)]

(1994)).  "[W]hether an individual is 'regarded as' having a disability 'turns on the employer's

perception of the employee' and is therefore 'a question of intent, not whether the employee has a

disability.'"  *Id.* at 646 (quotation omitted).  In order to qualify as disabled under this prong of the

ADA's definition of "disability," a plaintiff must show that the employer regarded him as

---

[9] The parties only discuss this aspect of Plaintiff's claim with regard to the major life
activities of working, lifting, and reaching.  Therefore, the Court only addresses it in terms of
whether Defendant regarded Plaintiff as having an impairment that substantially limited these
major life activities.

disabled within the meaning of the ADA, i.e., that the employer regarded him as having an impairment that substantially limited one or more of the major life activities at issue. *See Brtalik v. South Huntington Union Free Sch. Dist.*, No. CV-10-0010, 2010 WL 3958430, *8 (E.D.N.Y. Oct. 6, 2010) (citation omitted).

As Defendant correctly notes, "the crux of Plaintiff's claim is that Defendant[] repeatedly ignored his claims that he was disabled and refused to accommodate him by assigning him to light duty." *See* Dkt. 18-18, at 12-13. The fact that Defendant continues to allow Plaintiff to perform all of his job duties without limitations indicates that it did not "'perceive[] [him] to be incapable of working in a broad range of jobs' suitable for [a person] of [his] age, experience, and training." *Colwell*, 158 F.3d at 647 (citation omitted). The evidence is clear that Defendant did not regard Plaintiff as substantially limited in his ability to work, lift, or reach; and, thus, the Court finds that Plaintiff cannot establish that he has a disability under this prong of the ADA's definition of disability because Defendant did not "regard him as" impaired.

In sum, for all of these reasons, the Court finds that Plaintiff does not suffer from a disability within the meaning of the ADA as it existed prior to the effective date of the ADAAA.

### 2. Disability discrimination and failure to accommodate claims under the ADA

Since Plaintiff is unable to establish the first element of his prima facie case — that is, that he is an individual with a disability within the meaning of the ADA prior to January 1, 2009 — the Court grants Defendant's motion for summary judgment with regard to Plaintiff's disability discrimination and failure to accommodate claims in his first (ADA) and eighth (RA) causes of action insofar as they relate to conduct occurring *prior* to January 1, 2009.

-19-

### 3. Retaliation claim under the ADA

Although the Court finds that Plaintiff is not disabled within the meaning of the ADA

prior to the applicability of the ADAAA, "[t]he fact that plaintiff was not actually disabled within

the meaning of the ADA does not affect his retaliation claim, since the statute requires only that

he have contacted the EEOC with the good-faith belief that the [defendant's] conduct was

unlawful under the ADA." *Taylor v. Lenox Hill Hosp.*, No. 00 Civ. 3773, 2003 WL 1787118, *6

(S.D.N.Y. Apr. 3, 2003) (citations omitted).

Viewed in the light most favorable to Plaintiff, he has alleged that Defendant retaliated

against him in violation of the ADA and the RA when it disciplined him on several occasions

and sought to have him terminated because he asked for reasonable accommodations.[10]  *See*

Amended Complaint at ¶¶ 16, 18-22, 24, 55, 61.  Defendant contends that the Court should

dismiss this claim because Plaintiff failed to provide sufficient notice in his EEOC charge of a

claim for retaliation under the ADA.

Even if a plaintiff does not expressly raise an ADA retaliation claim in his EEOC charge,

he may still bring such a claim if it is based on conduct that is "reasonably related" to the

allegations in the EEOC charge.  *See Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d

1397, 1401 (2d Cir. 1993), *superceded by statute on other grounds*, Pub. L. No. 102-166

(citations omitted).  The Second Circuit recognizes three such situations where unexhausted

---

[10] Although the word "retaliation" does not appear in the first or eighth causes of action, these claims allege that Defendant discriminated against Plaintiff by taking adverse actions against him, "including without limitation, reprimands, suspension, disciplinary proceedings, and threat of termination . . . ."  *See* Amended Complaint at ¶¶ 24, 61.  Under the heading "Facts Common to All Claims," Plaintiff also alleged that he "has been brought up on disciplinary charges for absences and missed time, and as retaliation for complaints about failure to accommodate his disability."  *See id.* at ¶ 16.

claims may be "reasonably related" to the conduct alleged in the EEOC charge: (1) "where the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination'"; (2) where the "claim is one alleging retaliation by an employer against an employee for filing an EEOC charge"; and (3) "where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id.* at 1402-03 (quotation and other citations omitted). The first type of "reasonably related" claim is "essentially an allowance of loose pleading," recognizing that "EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering . . . ." *Id.* at 1402 (citations omitted).

Here, Plaintiff's EEOC charge contained allegations corresponding to those he now raises in his amended complaint. His EEOC charge stated that Defendant ignored Arbitrator Imundo's binding decision by continuing to deny Plaintiff's requests for reasonable accommodation in the form of light duty assignments on account of his disability. *See* Dkt. No. 29, Plaintiff's EEOC Charge. Plaintiff further alleged that Defendant informed Plaintiff that he could be terminated "after the April 17, 2007 hearing in which [Defendant] plans to state that [Plaintiff's] dismissal is predicated on [his] time and attendance record." *See id.* Accordingly, Plaintiff's allegations in support of his retaliation claim are substantially similar to those included in his original EEOC complaint. Moreover, although some acts of alleged retaliation occurred before Plaintiff filed his EEOC charge, the "'reasonably related' test is not limited to plaintiffs alleging post-charge conduct." *Francis v. City of N.Y.*, 235 F.3d 763, 766 (2d Cir. 2000) (footnote omitted). It is, therefore, "reasonable to conclude that Plaintiff gave the EEOC notice of these incidents." *Butts*,

-21-

990 F.2d at 1403; *see Ridgway v. Metro. Museum of Art*, No. 06 Civ. 5055, 2007 WL 1098737,

*5 (S.D.N.Y. Apr. 10, 2007) (holding that the plaintiff's retaliation claim was reasonably related

to his disability discrimination claim included in his EEOC charge where the charge alleged that

he had requested reasonable accommodation, that his requests had been denied, and that he was

subsequently terminated).

       For these reasons, the conduct about which Plaintiff complains in his retaliation claim

would fall within the scope of the EEOC investigation that could reasonably be expected to grow

out of his EEOC charge.  Since Plaintiff's retaliation claim in his amended complaint is

reasonably related to the allegations in his EEOC charge, the Court finds that he may bring this

claim despite his failure to exhaust administrative remedies.

       To establish a retaliation claim under the ADA, the plaintiff must show that (1) he

engaged in a protected activity; (2) his employer was aware of this activity; (3) he suffered an

adverse employment action; and (4) there was a causal connection between the protected activity

and the adverse employment action.  *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d

208, 223 (2d Cir. 2001) (quotation omitted).

       In the instant case, Plaintiff engaged in a protected activity when he repeatedly sought a

reasonable accommodation in the form of light duty assignments at work.  Defendant was aware

of this activity because Plaintiff made such requests both in writing and orally through the

appropriate channels.  In addition, Plaintiff has alleged various actions that might constitute

adverse employment actions, including reprimands, suspensions without pay, indeterminate

furlough of pay, threats of termination, and an attempted termination.  Finally, Plaintiff has come

forward with evidence tending to show that a causal connection exists between the protected

-22-

activity and the adverse employment action.[11]

Accordingly, the Court concludes that there is sufficient evidence to create a genuine issue of material fact with regard to Plaintiff's retaliation claims under the ADA and the RA.[12]

### 4. Disability under the ADAAA

As stated, since Plaintiff has alleged conduct that occurred both before and after the effective date of the ADAAA, i.e., January 1, 2009, the Court will apply the ADAAA to the extent that Plaintiff's amended complaint alleges conduct that occurred after January 1, 2009. *See Rumbin v. Ass'n of Am. Med. Colls.*, 803 F. Supp. 2d 83, 92 n.4 (D. Conn. 2011) (citations omitted).

Under the ADAAA, the definition of "disability" was substantially broadened. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325 (2008). It provides a more expansive interpretation of the term "substantially limited" so as to expand the class of individuals entitled to protection under the ADA. *See id.* Unlike the former standards for interpreting ADA claims, the ADAAA rejects an interpretation of "substantially limited" to mean "significantly restricted."

_____

[11] Plaintiff has come forward with evidence tending to show, among other things, that Defendant brought Plaintiff up on unnecessary disciplinary charges, suspended him, attempted to terminate him, threatened his job security, refused to abide by at least one binding arbitration award, forced only him to bring in doctors' notes to return to work after absences, and ignored persistent requests for accommodation in the form of light duty work.

[12] Plaintiff has met his burden to establish a prima facie case of retaliation under the ADA and the RA. Under the burden-shifting test set forth in *McDonnell-Douglas*, the burden shifts to Defendant to offer a legitimate, non-discriminatory reason for Defendant's attempt to fire him and for the several disciplinary charges brought against him. Defendant has, however, provided no such legitimate, non-discriminatory motive; Defendant has only argued that Plaintiff's complaint fails to allege a cause of action for retaliation and that he has failed to provide sufficient notice of a retaliation claim in his EEOC charge.

-23-

*See id.*  Following the implementation of the ADAAA, the EEOC regulations now define

"substantially limits," in pertinent part, as follows:

> (ii) An impairment is a disability within the meaning of this section
> if it substantially limits the ability of an individual to perform a
> major life activity as compared to most people in the general
> population.  An impairment need not prevent, or significantly or
> severely restrict, the individual from performing a major life
> activity in order to be considered substantially limiting.
> Nonetheless, not every impairment will constitute a disability
> within the meaning of this section.

> (iii) The primary object of attention in cases brought under the
> ADA should be whether covered entities have complied with their
> obligations and whether discrimination has occurred, not whether
> an individual's impairment substantially limits a major life activity.
> Accordingly, the threshold issue of whether an impairment
> "substantially limits" a major life activity should not demand
> extensive analysis.

> (iv) The determination of whether an impairment substantially
> limits a major life activity . . . . shall be interpreted and applied to
> require a degree of functional limitation that is lower than the
> standard for "substantially limits" applied prior to the ADAAA.

> *                    *                    *

> (vii) An impairment that is episodic or in remission is a disability if
> it would substantially limit a major life activity when active.

29 C.F.R. § 1630.2(j)(1).  The appendix to the final EEOC regulations further provides, among

other things, the following:

> In keeping with the findings and purposes of the [ADAAA], the
> determination of coverage under the law should not require
> extensive and elaborate assessment, and the EEOC and the courts
> are to apply a lower standard in determining when an impairment
> substantially limits a major life activity, including the major life
> activity of working, than they applied prior to the [ADAAA].

*Negron v. City of New York*, No. 10 CV 2757, 2011 WL 4737068, *11 (E.D.N.Y. Sept. 14, 2011)

(quotation omitted).

Under the ADAAA, to determine whether a plaintiff's impairment substantially limits his ability to work or engage in other major life activities, the court considers the effect of the plaintiff's seemingly episodic impairment *when it is active*. *See* 42 U.S.C. § 12102(4)(D); 29 C.F.R. § 1630.2(j)(1)(vii). Indeed, the ADAAA expressly provides that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D); 29 C.F.R. § 1630.2(j)(1)(vii). The prior version of the ADA did not include this language.

In this case, Plaintiff alleges that when his shoulder injury is active — i.e., "flares-up" — he is nearly incapacitated, which may render him temporarily incapable of working or performing other major life activities.

Furthermore, with respect to the major life activity of working, the EEOC regulations explain that, under the ADAAA "the terms 'class of jobs' and 'broad range of jobs in various classes' will [now] be applied in a more straightforward and simple manner than they were applied by the courts prior to the [ADAAA]." 29 C.F.R. Pt. 1630, Appendix, Interpretive Guidance on Title I of the Americans with Disabilities Act. A "class of jobs"

> may be determined by reference to the nature of the work that an individual is limited in performing (such as . . . law enforcement jobs) or by reference to job-related requirements that an individual is limited in meeting (for example, jobs requiring repetitive bending, reaching, or manual tasks, jobs requiring repetitive or heavy lifting, prolonged sitting or standing . . .).

*Id.*

Accordingly, given the more liberal standard for what qualifies as a disability under the

ADAAA, Plaintiff's two several-month-long absences from work and his allegations that he

suffers ongoing debilitating "flare-ups" may result in his being "actually disabled" from the major

life activity of work because his impairment substantially may limit his ability to perform not

only the unique tasks required of a Deputy Sheriff, but also a broader range of comparable jobs in

various classes.  Therefore, the Court finds that an issue of fact exists with respect to whether or

not Plaintiff qualifies as disabled under the ADAAA's broader definition of disability.


### 5. Disability discrimination and failure to accommodate claims under the post-ADAAA ADA and the RA[13]

#### a. Disability discrimination claim under the ADAAA

In order to establish a prima facie case of disability discrimination, a plaintiff must show

that (1) his employer is subject to the ADA; (2) he is disabled within the meaning of the ADA;

(3) he was otherwise qualified to perform the essential functions of the job, with or without

reasonable accommodation; and (4) he suffered an adverse employment action because of his

disability.  *See Jacques*, 386 F.3d at 198 (quotation omitted).

In this case, Plaintiff has satisfied the first prima facie element because Defendant is an

employer subject to the ADA.  He has also satisfied, at least for purposes of this motion, the

second element because, as discussed, he has created an issue of fact regarding whether he

qualifies as disabled within the meaning of the ADA, as amended, effective January 1, 2009.

Third, Plaintiff must establish that he was qualified to perform the essential functions of his job

---

[13] Plaintiff's retaliation claim need not be discussed under the ADAAA because the Court denies Defendant's motion for summary judgment as to this claim in its entirety, i.e., with respect to Defendant's conduct occurring before or after 2009.

with or without reasonable accommodation.  Since Plaintiff is currently performing his full duty functions as a custody deputy without medical restrictions or limitations — a point which Defendant concedes and uses to support its argument that Plaintiff does not qualify as disabled — he has satisfied this element.  Finally, as previously discussed, Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether or not Defendant took adverse action against him.[14]

Accordingly, the Court concludes that Plaintiff has established his prima facie case of disability discrimination under the ADA with respect to the two arbitration proceedings from 2009.[15]

### b. Failure to accommodate claim under the ADAAA

Plaintiff's failure to accommodate claim is premised on his assertion that, in direct disregard for Arbitrator Imundo's order that Defendant "make a good faith effort to provide some form of job/work accommodation for [Plaintiff]," Defendant has failed to do so.  Plaintiff has presented evidence that there are light duty positions available that would not require the creation of a new position and that he is qualified for such positions.  *See* Plaintiff Aff. at ¶¶ 7-10, 18, 21;

---

[14] The Court finds that the two disciplinary charges and suspensions that Defendant brought against Plaintiff in 2009 — both of which resulted in decisions and awards almost entirely in Plaintiff's favor — could constitute "adverse employment actions," and material issues of fact exist as to whether Plaintiff suffered from said adverse actions because of his disability.

[15] Pursuant to the burden-shifting framework set forth in *McDonnell-Douglas*, once Plaintiff has established his prima facie case, the burden shifts to Defendant.  Defendant, however, has failed to articulate a legitimate, non-discriminatory reason for its actions sufficient to shift the burden back to Plaintiff to prove that Defendant's disciplinary charges were mere pretext for discrimination.  Accordingly, summary judgment is inappropriate and this issue should be left for a jury.

Dkt. No. 26, Exh. 7, Affidavit of Arthur Barksdale dated December 20, 2010, at ¶¶ 6-12; Dkt.

No. 26, Exh. 7(b), Affidavit of Danny Matthews dated December 29, 2010, at ¶¶ 6-7, 9, 10-12;

Dkt. No. 26, Exh. 8, Affidavit of Walter Rys dated July 15, 2010, at ¶¶ 5-7, 9, 12-18.

Furthermore, in one of the arbitration proceedings from 2009, *see* Dkt. No. 25, Exh. 5, Arbitrator

Donn ultimately ruled in Plaintiff's favor, finding, among other things, that Defendant "has

refused to provide the good faith effort at accommodation or light duty work that Arbitrator

Imundo ordered." *See id.*

Defendant has presented evidence that, to the contrary, there are no permanent light duty

positions available. *See* Metz Aff. at ¶¶ 34-44; Dkt. No. 18-6, Affidavit of Kevin Brisson dated

February 8, 2011, at ¶¶ 5-7, 11, 19-21.

During the relevant post-January 1, 2009 timeframe, when Plaintiff and Defendant were

engaged in two arbitration proceedings stemming from various charges against Plaintiff, the

Court finds that genuine issues of material fact exist as to whether a reasonable accommodation

existed in the form of a light-duty position for which Plaintiff was qualified and, if such a

position existed, whether Defendant, by not placing Plaintiff in one of these positions, thereby

failed to make a reasonable accommodation.[16]  Accordingly, the Court denies Defendant's motion

for summary judgment with respect to Plaintiff's failure to accommodate claim insofar as that

claim relates to conduct that occurred after January 1, 2009.

In sum, for the above-stated reasons, with respect to Plaintiff's first (ADA) and eighth

---

[16] Since Plaintiff has satisfied his burden at this stage, the burden shifts to Defendant to show that the accommodation would result in undue hardship. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000) (citation omitted).  Defendant has failed to meet its burden because it has not demonstrated that there are no light duty positions available.

(RA) causes of action, the Court denies Defendant's motion for summary judgment with regard to Plaintiff's retaliation claim in its entirety; grants the motion with regard to Plaintiff's disability discrimination and failure to accommodate claims insofar as those claims relate to conduct that occurred prior to January 1, 2009; and denies the motion with respect to Plaintiff's disability discrimination and failure to accommodate claims insofar as those claims relate to conduct that occurred after January 1, 2009.

**C.     Second, third, fourth, and fifth causes of action: NYHRL, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, and Breach of Contract**

Defendant contends that the Court should dismiss Plaintiff's second, third, fourth, and fifth causes of action because he did not timely serve a notice of claim on Defendant.  Plaintiff argues that the Court should permit his state-law claims to go forward despite his failure to comply with the notice-of-claim requirements because an exception exists under New York County Law § 52 where a plaintiff is vindicating a public, rather than private, interest.

"[I]n a federal court, state notice-of-claim statutes apply to *state*-law claims." *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (citations omitted).  In this case, Plaintiff has brought four causes of action pursuant to New York State law: (1) a claim under the NYHRL, (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; and (4) breach of contract.

New York County Law § 52 provides, in pertinent part:

> Any claim or notice of claim against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature, and whether casual or continuing trespass or nuisance and any other claim for damages arising at law or in equity, alleged

> to have been caused or sustained in whole or in part by or because
> of any misfeasance, omission of duty, negligence or wrongful act
> on the part of the county, its officers, agents, servants or
> employees, must be made and served in compliance with section
> fifty-e of the general municipal law.

N.Y. County Law § 52(1). New York General Municipal Law § 50-e requires service of a notice

of claim ("Notice of Claim" or "Notice") within ninety days after the claim arises. *See* N.Y. Gen.

Mun. Law § 50-e(1)(a). Among other things, the Notice must state the nature of the claim and

"the time when, the place where and the manner in which the claim arose[.]" N.Y. Gen. Mun.

Law § 50-e(2). The Notice need not provide that information with "'literal nicety or exactness'";

rather, the test is whether it provides facts sufficient to enable the defendant to investigate.

*Phillipps v. N.Y. City Transit Auth.*, 68 A.D.3d 461, 462 (1st Dep't 2009) (quotation omitted).

In this case, Plaintiff failed to provide any Notice of Claim to Defendant. The filing of a

timely Notice of Claim is a condition precedent to bringing a state-law claim against a County or

other municipality. *See, e.g.*, *Brennan v. Albany Cnty.*, No. 00-CV-01985, 2005 WL 2437026,

*6 (N.D.N.Y. Sept. 30, 2005) (quotation omitted). Although there is an exception to the Notice

requirement where a plaintiff is seeking to vindicate a public, rather than a private, interest, *see*

*Mills v. Cnty. of Monroe*, 59 N.Y.2d 307, 308-09 (1983), Plaintiff's conclusory allegations that he

brought this action to vindicate a public interest do not suffice. Indeed, although Plaintiff is

seeking an injunction in addition to damages, he is primarily seeking to redress his own alleged

injuries. *See Wallikas v. Harder*, 67 F. Supp. 2d 82, 85-86 (N.D.N.Y. 1999) (citations omitted)

(holding that the plaintiffs' state-law claims were brought to enforce private rights, rather than to

vindicate a public interest, where they sought monetary damages, reinstatement to their former

jobs, and the removal of any admonitions on their personnel records).

Accordingly, the Court dismisses Plaintiff's state-law claims for intentional infliction of emotional distress and negligent infliction of emotional distress.  In addition, the Court dismisses Plaintiff's NYHRL claim because "a cause of action under the Human Rights Law, while not a traditional tort, is subject to the notice of claim requirements of County Law § 52." *Brennan*, 2005 WL 2437026, at *6 (citations omitted); *Picciano v. Nassau Cnty. Civil Serv. Comm'n*, 290 A.D.2d 164, 168-69 (2d Dep't 2001) (holding that the failure to serve a Notice of Claim pursuant to County Law § 52 in an action to recover damages based on the Human Rights Law is fatal unless the action has been brought to vindicate a public interest).

Finally, with regard to Plaintiff's breach-of-contract claim, even though County Law § 52 generally applies to any claim for damages against a county, *see Fitzgibbons v. City of Oswego*, No. 5:10-CV-1038, 2011 WL 6218208, *3 (N.D.N.Y. Dec. 13, 2011) (citations and footnote omitted), breach-of-contract claims are not subject to the notice-of-claim requirements of County Law § 52. *See Copece Contr. Corp. v. Cnty. of Erie*, 115 A.D.2d 320, 320 (4th Dep't 1985) (citations omitted); *Smith v. Rise East School*, 120 A.D.2d 726, 726 (2d Dep't 1986) (citations omitted); *Byrnes v. Monroe Cnty.*, 490 N.Y.S.2d 977, 985 (City Ct. 1985), *judgment aff'd by* 499 N.Y.S.2d 350 (Cnty. Ct. Monroe Cnty. 1986), *order rev'd on other grounds by* 122 A.D.2d 549 (4th Dep't 1986); *Meed v. Nassau Cnty. Police Dep't*, 70 Misc. 2d 274, 275-76 (N.Y. Sup. Ct. Nassau Cnty. 1972); *Gahagan Dredging Corp. v. Cnty. of Nassau*, 71 Misc. 2d 751, 752 (N.Y. Sup. Ct. Nassau Cnty. 1972).  The Court, therefore, denies Defendant's motion for summary judgment as to this claim.

Accordingly, the Court grants Defendant's motion for summary judgment with respect to Plaintiff's second, third, and fourth causes of action and denies it with respect to Plaintiff's fifth

cause of action for breach-of-contract.

**D.     Sixth cause of action: 42 U.S.C. § 1981**

To establish a claim under 42 U.S.C. § 1981, a plaintiff must establish that (1) he is a member of a racial minority; (2) the defendant intended to discriminate against him on the basis of his race; and (3) the discrimination concerned one of the statute's enumerated activities.  *See Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000) (citation omitted).

Here, Plaintiff makes no allegations on the basis of race; rather, Plaintiff, a Caucasian male, alleges that Defendant discriminated against him on the basis of his disability.  This claim is simply not cognizable under 42 U.S.C. § 1981 because Plaintiff is not a member of a protected class for purposes of § 1981.[17]  Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiff's sixth cause of action.

**E.     Seventh cause of action: 42 U.S.C. § 1983**

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must show that a person or entity, acting under color of state law, deprived him of the rights, privileges, or immunities guaranteed by the Constitution or by federal law.  *See* 42 U.S.C. § 1983; *McDarby v. Dinkins*, 907 F.2d 1334, 1336 (2d Cir. 1990) (citation omitted).  Since § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred' . . . . [t]he first step in [analyzing] any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal

---

[17] Furthermore, the Court deems this cause of action abandoned because Plaintiff does not address it in his response papers. *See Quintero v. Rite Aid, Inc.*, No. 09 Civ. 6084, 2011 WL 5529818, *19 (S.D.N.Y. Nov. 10, 2011) (quotations and other citations omitted).

quotation and other citations omitted).  To state an actionable claim under § 1983, a plaintiff

must establish that the defendant's conduct deprived him of a federal right while acting under

color of state law.  *See Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citations omitted).

In this case, Plaintiff's amended complaint does not set forth the constitutional or

statutory basis upon which he bases his § 1983 claim.  Plaintiff alleges the following:

> Defendant Kevin Walsh in his capacity as Sheriff of Onondaga
> County knew or should have known of the conduct of Plaintiff's
> commanding officers, including Lieutenant Metz, and members of
> the council of chiefs, and discriminated against him by failing or
> refusing to take effective action to stop the denial of
> accommodation to, discipline of, and retaliation against Plaintiff in
> violation of Section 1983.

*See* Amended Complaint at ¶ 55.  Plaintiff's response papers also fail to clearly to identify the

alleged Constitutional right or federal statute that Defendant's conduct implicates.

Construed in the light most favorable to Plaintiff, he appears to allege an Equal Protection

claim for disability discrimination because he alleges that (1) he was the only employee required

to bring in doctors' notes stating that he was medically capable of working without restrictions,

and (2) Defendant failed to accommodate his disability while accommodating the disabilities of

other similarly situated employees.  *See* Memorandum of Law in Opposition to Defendant's

Motion for Summary Judgment at 11.

Generally, to establish a 42 U.S.C. § 1983 claim under the Equal Protection Clause of the

Fourteenth Amendment, Plaintiff must allege that he was treated differently than similarly

situated employees and that such treatment was based on impermissible characteristics such as

race, national origin, or gender.  *See Hayden v. Cnty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999)

(citation omitted).  Plaintiff must, therefore, show that Defendant acted with purposeful

discrimination toward an identifiable class.  *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted).  In this case, however, Plaintiff has not alleged discrimination against an identifiable class because disability is not a protected class under the Equal Protection Clause. *See Kaiser v. Highland Cent. Sch. Dist.*, No. 1:08-CV-0436, 2008 WL 5157450, *2 (N.D.N.Y. Dec. 8, 2008) (citations omitted).

Courts in the Second Circuit are in disagreement regarding whether a public employee may bring an Equal Protection claim for disability discrimination under § 1983.  *See Negron*, 2011 WL 4737068, at *15 (collecting cases).  In *Kaiser*, as in this case, the plaintiff alleged that the defendants violated his Equal Protection rights because they discriminated against him based on his disability or perceived disability.  *See Kaiser*, 2008 WL 5157450, at * 2.  The court held:

> Disability and/or perceived disability are not suspect or quasi-
> suspect classifications. . . .  Therefore, a plaintiff asserting an Equal
> Protection claim under 42 U.S.C. § 1983 based on disability
> discrimination is asserting a "class of one" Equal Protection claim,
> to which the courts apply rational basis analysis. . . .  However, in
> *Enquist v. Oregon Department of Agriculture*, the Supreme Court
> held that the Equal Protection Clause does not apply to a public
> employee asserting a violation of the Equal Protection Clause
> under a "class of one" theory. . . .

*Id.* (internal citations omitted); *see also Gallagher v. Town of Fairfield*, No. 3:10-cv-1270, 2011 WL 3563160, *4 (D. Conn. Aug. 15, 2011) (citations omitted) (finding that the plaintiff "does not have a cognizable claim under the Equal Protection Clause of the Fourteenth Amendment" because disability is not a protected class).  *But see Graham v. Watertown City Sch. Dist.*, No. 7:10-CV-756, 2011 WL 1344149, *4-*5 (N.D.N.Y. Apr. 8, 2011) (finding that a public employee plaintiff alleged "a class-based equal protection claim, not a class-of-one claim" because, despite being the only disabled employee, the plaintiff did not claim to be in a class of

her own, but rather alleged class-based disability discrimination).

Here, Plaintiff appears to allege that he was "unfairly singled out by Defendant[] in violation of the Equal Protection Clause," *Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist.*, No. 07-CV-8828, 2009 WL 3151200, *6 (S.D.N.Y. Sept. 29, 2009), because Defendant required him, and only him, to bring in doctors' notes in order to work following absences. *See* Amended Complaint at ¶¶ 14-15, 55. To bring such a claim, a plaintiff must allege that he "'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 58 (2d Cir. 2010) (quotation and footnote omitted). To the extent that this vague cause of action constitutes a "class of one" Equal Protection claim, the Court finds that this claim fails because such claims are not cognizable in the public employment context. *See Enquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 604-09 (2008); *Appel v. Spiridon*, 531 F.3d 138, 139 (2d Cir. 2008) (quotation omitted).

Furthermore, to the extent that Plaintiff alleges a failure to accommodate on the basis of his disability or perceived disability under 42 U.S.C. § 1983, this too must fail "because the Equal Protection Clause does not require accommodations for the disabled." *Negron*, 2011 WL 4737068, at *16 (citation omitted).

Therefore, the Court grants Defendant's motion for summary judgment with respect to Plaintiff's seventh cause of action pursuant to 42 U.S.C. § 1983 because Plaintiff, a public employee, cannot maintain a "class of one" Equal Protection claim.[18]

---

[18] Even if Plaintiff were able to assert an Equal Protection claim, since he has failed sufficiently to allege a discriminatory policy or custom or a failure to train on the part of

(continued...)

## IV. CONCLUSION

Accordingly, having reviewed the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment is **GRANTED** with respect to Plaintiff's second, third, fourth, sixth, and seventh causes of action; and the Court further

**ORDERS** that Defendant's motion for summary judgment is **DENIED** with respect to Plaintiff's fifth cause of action; and the Court further

**ORDERS** that, as to Plaintiff's first and eighth causes of action, Defendant's motion for summary judgment is **DENIED** with regard to Plaintiff's retaliation claim; **GRANTED** with regard to Plaintiff's disability discrimination and failure to accommodate claims insofar as those claims relate to conduct that occurred prior to January 1, 2009; and **DENIED** with regard to Plaintiff's disability discrimination and failure to accommodate claims insofar as those claims relate to conduct that occurred after January 1, 2009; and the Court further

---

[18](...continued)
Defendant, his claim could not survive under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See, e.g.*, *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (collecting cases).

**ORDERS** that Plaintiff's counsel is to initiate a telephone conference, using a professional teleconferencing service, with the Court and opposing counsel on **February 29, 2012**, at **9:30 a.m.** to set a trial date for this matter.

**IT IS SO ORDERED.**

Dated: February 9, 2012
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge