## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

**GEORGE J. O'CONNELL,**

                    **Plaintiff,**

                                                  **PLAINTIFF'S TRIAL BRIEF**

**vs.**

**ONONDAGA COUNTY,**                              **Civil Action No. 09-CV-364**
                                                             **(FJS/ATB)**

                    **Defendant.**

---

### PRELIMINARY STATEMENT

The Plaintiff, a Caucasian male, has been employed with the Onondaga County Sheriff's Department in its custody division since January 1990.  In November 1993, Plaintiff injured his left should while attempting to prevent an inmate from suicide.  Plaintiff reported the on-the-job injury within Department policy on the next day.  Plaintiff continued to experience pain and other complications from the injury.  His physician, Dr. Newman determined him to be "totally disabled" in March 1994.  In May 1994, Plaintiff underwent distal clavicle excision surgery.  He was returned to work after this surgery with physical restrictions.

Plaintiff suffered another on the job injury to his left should in January 1996 while attempting to lift a crate.  He underwent a second surgery on his left shoulder on July 1, 1996, and was taken out of work until further notice.  Plaintiff returned to work in September 1996, and was medically restricted from doing overtime hours.

Subsequently, Plaintiff continued to experience difficulty and pain with his left shoulder over the next several years.  He was treated by Dr. Newman for pain and recurring spasms in his left shoulder and arm.  In June 1999, Dr. Newman indicated that Plaintiff would continue to

1

experience "acute exacerbations of his pain" and that he was to avoid cross-over maneuvers to be more comfortable.

Defendant sent Plaintiff to an Independent Medical Examination in November 2000, conducted by Dr. W. David Ferraraccio, an orthopedic surgeon. Dr. Ferraraccio determined that Plaintiff had a 50% loss of use in left arm, 40% reduction in range of motion, and 10% loss of bone. Dr. Ferraraccio further concluded that he expected Plaintiff to continue to have recurring temporary flare-ups as he had experienced over the preceding two or three years; and that Plaintiff had reached maximum medical improvement.

There was a failed agreement in December 2002, between Plaintiff, the Deputy Sheriff's Benevolent Association of Onondaga County, Inc., ("DSBA") and Defendant. As part of the agreement Plaintiff was to apply with full cooperation from Defendant for disability retirement to New York State and Local Retirement System, and Defendant would drop disciplinary charges against him. Plaintiff made the application, but Defendant failed to assist him in that it continued to force him to work without accommodation despite his shoulder disability. As a result, in 2005, the New York State and Local Retirement System denied Plaintiff's application because they found he was not permanently incapacitated from performance of his duties.

In October 2006, Plaintiff aggravated his left shoulder while conducting a search of the pod, and filed another injury report. At this point, Plaintiff began to make written requests to Defendant to accommodate his disability by placing him in a light duty position. Defendant via Kathy Homestead, Personnel Officer, asked Plaintiff to make a formal request for an ADA accommodation and supply a medical statement of his disability. Plaintiff complied and submitted a handwritten request letter, Work Limitation/Restriction form restricting him from

2

overtime, and medical documents from Dr. Lana Cain regarding his physical condition.  Dr. Cain indicated that Plaintiff had a shoulder disability and should be placed in a work position better suited for his disability.

On or about January 31, 2007, Plaintiff reiterated his interest in being placed in a light duty position with less inmate contact like a desk job involving working with a computer.  His request was denied by Defendant.

Eventually, three arbitration proceedings were held in 2006, and 2009.

The first proceeding was before Arbitrator Louis V. Imundo, Jr., in August 2006. Arbitrator Imundo found that Defendant had subjected Plaintiff of disparate treatment and that there as no just cause to terminate or discipline him for his record of absences.  Arbitrator directed Defendant to drop all charges and expunge them from Plaintiff's work record and ordered Defendant to make a good faith effort to provide some form of job/work accommodation for the Plaintiff.  Defendant appealed the Arbitrator's decision to New York State Supreme Court, and lost when the court confirmed the arbitration award on September 12, 2007. Defendant failed to appeal this order.

In 2009, Defendant brought disciplinary charges and suspended Plaintiff for 4 offenses that occurred in 2007.  These offenses occurred on the same day Plaintiff made requests for accommodation by Defendant.  The matter was taken to arbitration and Arbitrator Joyce M. Klein found that three of the four charges were unsubstantiated and dismissed them.  Further she reversed the 10 day suspension and awarded Plaintiff lost back pay and benefits.

In 2009, Plaintiff was disciplined with a 20 day suspension after he complained in September 2008, about being ordered to work overtime.  Plaintiff had a work restriction on

3

record for overtime.  A third arbitration proceeding was held on December 2009, and a decision

was made in January 2010, by Arbitrator Clifford B. Donn who found that Defendant continued

to refuse to comply with Arbitrator's Imundo's award that it make a good faith effort to

accommodate Plaintiff.  Arbitrator Donn determined that Defendant did not have just cause to

discipline Plaintiff and awarded him lost pay and benefits.

In October 2006, Plaintiff filed a charge of discrimination with the New York State

Division of Human Rights ("NYSDHR") and Equal Employment Opportunity Commission

("EEOC").  There was a finding of probable cause, and on December 30, 2008, the EEOC issued

a right to sue letter.  Plaintiff filed this action on March 29, 2009.


## I.  PLAINTIFF HAS A DISABILITY WITHIN MEANING OF  ADAAA AND REHABILITATION ACT AS AMENDED FOR ACTS OF DEFENDANT WHICH OCCURRED AFTER JANUARY 1, 2009

This Court denied Defendant(s)' summary judgment motion concerning Plaintiff's

disability discrimination as to conduct occurring after January 1, 2009, under the ADAAA and

RA as amended.  Rumbin v. Ass'n of Am. Med. Colls., 803 F. Supp.2d 83, 92 (D. Conn. 2011).

Under the ADAAA, the definition of disability was substantially broadened.  The 2008

amendments to ADA overturned the U.S. Supreme Court cases of Sutton v. United Air Lines,

Inc., 527 U.S. 471 (1999) and its companion cases  (which narrowed the broad scope of

protection intended to be afforded by the ADA eliminating protection for many individuals

whom Congress intended to protect); and Toyota Motor Manufacturing Kentucky v. Williams,

534 U.S. 184 (2002) (which interpreted the term "substantially limits" to require a greater degree

of limitation than was intended by Congress).[1]  Furthermore, the Congress found that the current EEOC ADA regulations defining of the term "substantially limits" as "significantly restricted" are inconsistent with congressional intent, by expressing too high a standard.

The revised EEOC regulations following the implementation of the ADAAA now define "substantially limits" as "an impairment [that] need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. §1630.2(j)(1)(ii).  The ADAAA provides that an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.  42 U.S.C. § 12102(4)(D); 29 C.F.R. § 1630.2(j)(1)(vii).

Plaintiff can make out both prongs of the definition of "substantially limits.  As to the first prong, it was medically determined that Plaintiff suffered a 50% loss of use of his left shoulder.   The loss of use  means that he has half as much use as the average person, and  it significantly impacts his ability to do the major life activities of reaching up, lifting, caring for himself, sleep or work. This is further impacted by his 40% loss of range of motion.  He cannot do those things that an average person can perform with his/her shoulder.

Under the second prong, Plaintiff can meet the standard because the damage to his shoulder is permanent and cannot be improved through further surgery or other medical means. Dr. Newman stated that Plaintiff would have to find a way to live with it, and would not be able to perform cross over maneuvers.    Also, The loss of 10% of bone is permanent as well.

---

[1]§12101 note: Findings and Purposes of ADA Amendments Act of 2008, Pub.L.110-325,§2, Sept. 25, 2008, 122 Stat.

Defendants' contention that Plaintiff only experiences the disability when he has a "flare up" is inaccurate.  Plaintiff's loss of use and reduced range of motion exist everyday and impacts how he does things for himself daily.  The loss of use and limited range of motion is accompanied by daily pain that is chronic and persistent.   Plaintiff has been written up for his appearance when he has come to work because he cannot adequately perform the major life activities of caring for himself.

Under the ADAAA and RA, as amended,  to prove disability discrimination, a plaintiff must show that (1) his employer is subject to the ADA; (2) he is disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability.

The first prong of the analysis is satisfied as Defendant is an employer subject to the ADAAA, and RA, amended.  The Defendants meet the definition of employer in that they each employ more than 15 employees for more than 20 calendar weeks in any year, and are recipients of federal aid.  The first prong has been satisfied.

Given the above discussion concerning the revised definition of "substantially limits" under the ADAAA, this Court DMO, determined that Plaintiff has created an issue of fact as to whether or not he qualifies as disabled within the meaning of the ADAAA as amended.

Third, Plaintiff must establish that he was qualified to perform the essential functions of his job with or without reasonable accommodation.  Defendant has conceded that Plaintiff (when allowed to work) has performed his full duty functions as a custody deputy without medical

restrictions or limitations.

As to the last prong, Plaintiff can demonstrate that Defendant continued to bring him up on disciplinary charges, and to suspend him for various periods that necessitated the filing of grievances. These grievances were heard in an arbitration proceedings in 2009. Defendant's discipline against Plaintiff qualifies as adverse employment action.

Plaintiff has made out a prima facie case for disability discrimination against Defendants under ADAAA, and RA, as amended for actions occurring after January 1, 2009, and these issues of fact must be decided by a jury.

## II. DEFENDANTS FAILED TO PROVIDE PLAINTIFF REASONABLE ACCOMMODATION UNDER THE ADAAA, AND RA AS AMENDED

The ADA and Rehabilitation Act prohibit an employer from discriminating against an employee because of an disability. Under the ADA discrimination includes "not making reasonable accommodations to a known physical or mental limitations of an otherwise qualified individual with a disability unless it would be an undue hardship. Lyons v. The Legal Aid Society, 68 F.3d 1512, 1514 (2d Cir. 1995). The Rehabilitation Act similarly prohibits disability based discrimination by government agencies and other recipients of federal funds in that "no otherwise qualified individual with a disability shall solely by reason of his/her disability be excluded from the benefits of, or be subjected to discrimination. Id.

To make a claim under the ADA or Rehabilitation Act, a plant can state a claim for discrimination when the employer fails to accommodate a disability by showing (1) that the employer is subject to the statute; (2) he is an individual with a disability under the statute; (3)

with or without reasonable accommodation could perform the essential functions of the job; and (4) that the employer had notice of the plaintiff's disability.

The definition of reasonable accommodation has been defined by a nonexclusive list of different methods of accommodation including but not limited to job restructuring, part-time or modified work schedules, reassignment to a vacant position or modifications of examinations, training materials or policies.  Id. at 1515.

The Defendants meet the definition of employer in that they each employ more than 15 employees for more than 20 calendar weeks in any year, and are recipients of federal aid.  The first prong has been satisfied.

The second prong is that plaintiff is disabled within meaning of ADAAA, and by extension the Rehabilitation Act.  Based upon the reason(s) discussed above in Section I, Plaintiff can demonstrate that he is disabled withing the meaning of ADAAA, and the Rehabilitation Act, as amended.

As to the third prong, the physical impairment of plaintiff substantially limits his ability to work, a major life activity, has existed for nearly 18 years, and is degenerative.  It has been established that no further medical intervention can alter its current condition.  However, with accommodation Plaintiff would be able to perform the essential functions of his job.  Plaintiff's job requirements include direct physical contact with inmates in confrontational and non-confrontational situations, ability to stand, climb, walk, lift, and reach.  Defendants have developed a variety jobs to implement these requirements.  Some of these positions necessitate direct contact on a daily basis with inmates (i.e., general housing), and others involve multiple

8

deputies being used at once to do the function (control unit).

Plaintiff has demonstrated that he can perform the essential functions of the job, even if with difficulty.  He has worked on general housing pods, and attempted to conduct cell searches. On several occasions, Plaintiff requested accommodation in writing.  He has identified which positions are considered light duty the would meet his requirements that fall within the essential functions of the job.   Defendant has ignored his requests for accommodation repeatedly, although, it has allowed other deputies to remain in these positions notwithstanding any point that they may be biddable positions.

Defendants have not only refused to accommodate plaintiff, but have gone out of their way to place him in job functions that it knows will put him, inmates, and other deputies at risk. Lt. Rys' affidavit outlines the efforts of some managers to accommodate plaintiff, but they had their decision counter manned by the higher ups.

Furthermore, (former) DSBA President, Danny Matthews, has indicated that there are jobs requested by plaintiff that would not require the creation of a new position or alter current positions available.   Defendants have provided them to similarly situated deputies, but denied plaintiff the same opportunity without legitimate business reason or just cause.   There is no indication from him that he had any problem with plaintiff's placement in these "light duty" positions because of contractual bidding issues.

The binding arbitration award by Imundo, and the subsequent upholding by Onondaga County Supreme Court makes out a violation of the ADA[2] because Defendants were directed to

_____

[2]This includes the ADAAA and RA, as amended.

provide accommodation to plaintiff and have disregarded the order.   Arbitrator Donn reiterated

in his order that Defendant had refused to comply with a good faith effort to accommodate

Plaintiff.

Furthermore, (former) Sgt. Barksdale indicates that there were times when he was ordered

to remove plaintiff from the regular rotation which would have placed him in a job often used to

satisfy light duty assignments.


### III.  DEFENDANT RETALIATED AGAINST PLAINTIFF IN VIOLATION OF THE ADA and RA


Under Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002),  a plaintiff

experiences retaliation under ADA and the Rehabilitation  Act where he has (1) engaged in

activity protected by ADA;  (2) employer was aware of this activity; (3) the employer took

adverse action against him; and (4) a causal connection exists between the adverse action and the

protected activity.

The claims for retaliation under ADA and RA are reasonably related to his EEOC charge

in that (1) the conduct fell within the scope of the EEOC investigation and can reasonably be

expected to grow of out of the charge of discrimination.  Butts v. City of N.Y. Dep't of Housing.

Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993), *superceded by statute of other grounds,*

(citations omitted).  This Court in its DMO found that Plaintiff's EEOC charge contained

allegations corresponding to the claims he raised in his amended complaint; and concluded that

the Plaintiff gave the EEOc notice of these incidents.  *Page 21 of DMO.*

In the case at bar, the plaintiff engaged in protected activity when he notified Defendants of his disability and his request to be accommodated. After one such notification in September 2007, disciplinary charges were initiated in less than a few months.  Plaintiff was suspended for twenty days and after grieving the matter through his union received a favorable award in arbitration. Arbitration  Award.  With each request for accommodation, plaintiff was threatened with termination after he engaged in protected activity in 2008 and 2009, and was suspended for a number of days.   Arbitrator Donn determined in January 2010, that Defendant did not have just cause to discipline Plaintiff and awarded him lost pay and benefits.

Defendant would have this Court improperly invade the province of the jury.  The Plaintiff's claim for retaliation should be allowed to go to the jury.

### IV.  PLAINTIFF'S FAILURE TO FILE A NOTICE OF CLAIM DOES NOT BAR HIS BREACH OF CONTRACT CLAIM

County Law § 52 generally applies to any claim for damages against a county, and is a pre-requisite to allowing suit.  However, breach of contract claims are not subject to the notice of claim requirements of New York County Law § 52.  Copece Contr. Corp v. Cnty. of Erie, 115 A.D.2d 320, 320 (4th Dep't 1985).

Under the collective bargaining agreement between DSBA and Defendant, arbitration proceedings are binding and final unless appealed from.  Defendant disciplined Plaintiff for absences due to his shoulder injury.  Plaintiff grieved the discipline and an arbitration proceeding was held in October 2006.  Arbitrator Imundo award found that Defendant had treated Plaintiff disparately, denied Defendant had just cause to discipline Plaintiff, and ordered that Plaintiff's work record be expunged.  He further indicated that Defendant were to make a good faith effort

11

to accommodate Plaintiff's disability.  The Defendant appealed from the Imundo award, and the New York State Supreme Court denied the appeal and confirmed the award on September 12, 2007.  Defendant has failed to appeal the NYS Supreme Court order.

Again, Defendant brought disciplinary charges and suspended Plaintiff.  Plaintiff grieved under the contract the discipline.  Two more arbitration proceedings were held in 2009.  Both arbitrators, Klein and Donn disallowed the discipline, dismissed much of the charges, and ordered back pay.  Arbitrator Donn's award reiterated that Defendant had failed to comply with the Imundo award to make a good faith effort to reasonably accommodate Plaintiff.  To date, Defendant has failed to accommodate Plaintiff, although it has existing positions that would suffice.

Defendant failure to comply with the arbitration award(s) has created a question of fact for the jury.

Dated: August 24,
Syracuse, New York

_____/s/ K. Felicia Davis_____
K.  FELICIA DAVIS, ESQ.
Bar Roll No. 510186
Attorney for Plaintiff
P.O. Box 591
Syracuse, New York 13201-0591
(315) 383-6388

TO:   Carol Rhinehart, Esq., of Counsel
      Attorney for Defendant
      Onondaga County Attorney
      421 Montgomery Street, 10th Floor
      Syracuse, New York 13202